UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------- X

OPTERNATIVE, INC.,

           Plaintiff,

  -against-

JAND, INC. d/b/a WARBY PARKER,

           Defendant.

------------------------------- X



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2-13-19

No. 17 Civ. 6936 (JFK)
**OPINION & ORDER**

APPEARANCES

FOR PLAINTIFF OPTERNATIVE, INC.
    Barry F. Irwin, Esq.
    Iftekhar A. Zaim, Esq.
    IRWIN IP LLC

FOR DEFENDANT JAND, INC. d/b/a WARBY PARKER
    Philip A. Irwin, Esq.
    Gillian A. Kassner, Esq.
    Richard L. Rainey, Esq.
    Peter A. Swanson, Esq.
    COVINGTON & BURLING LLP

**JOHN F. KEENAN, United States District Judge:**

    Plaintiff Opternative, Inc. ("Opternative") brings a motion for leave to file an amended complaint (the "Amended Complaint") following the Court's August 7, 2018 Opinion & Order partially dismissing without prejudice Opternative's claims against Defendant JAND, Inc. d/b/a Warby Parker ("Warby Parker"). For the reasons below, Opternative's motion is granted.

## I.   Background

### A. Factual Background

The Court presumes familiarity with the allegations made in Plaintiff's original complaint and the procedural history of this litigation prior to the entry of its August 7, 2018 Opinion & Order. Briefly stated, Opternative is a startup focused on creating corrective lens prescriptions based on eye exams, also known as "refractions," taken online. (Compl. ¶ 9.) Opternative developed a system whereby an ophthalmologist can generate a corrective lens prescription using an online vision test that a patient can self-administer. (Id.) Opternative launched this system, which is protected by U.S. Patent Nos. 9,237,842, 9,492,074, and 9,504,378, in July of 2015. (Id. ¶¶ 11, 27.)

In 2013, while it was developing its online refraction system, Opternative met with Warby Parker to discuss a potential partnership. (Id. ¶ 15.) Over the course of their discussions, the parties entered into three non-disclosure agreements ("NDAs"). (Id. ¶¶ 15, 21, 38.) These NDAs prohibited Warby Parker from using Opternative's confidential and proprietary information, except to evaluate a potential partnership or acquisition. (Id. ¶ 23.) Warby Parker had to return all of Opternative's confidential information upon termination of the NDAs and could not decompile, disassemble, or reverse engineer any proprietary information. (Id. ¶¶ 19, 23.) Any work derived from Opternative's confidential information would remain the property of Opternative. (Id. ¶ 26.)

Under the protection of these NDAs, Opternative disclosed demonstrations of its latest builds, explanations as to how its system determined corrective lens prescriptions, and raw results of its eye exam software. (Id. ¶¶ 17, 24, 37, 39.) Opternative also disclosed confidential trade secret information, including (1) a memorandum by Opternative's outside counsel detailing Opternative's proprietary corporate structure, (2) a comprehensive report detailing the results of Opternative's clinical trials, and (3) details regarding Opternative's operating expenses. (Id. ¶ 25.)

On May 2, 2015, before the parties had entered into their third NDA, Opternative sought assurances from Warby Parker that Warby Parker was not designing its own system of administering online eye exams. (Id. ¶ 29.) In response, Warby Parker's co-CEO, Dave Gilboa ("Gilboa"), stated that Warby Parker was "excited to move forward with further testing of [Opternative's] latest exam" and indicated that he was "sensing a bunch of concern" that he thought was "misplaced." (Id. ¶ 31.)

Despite assurances from Gilboa, while discussions between Opternative and Warby Parker were ongoing, Warby Parker was allegedly pursuing its own online refraction system, and, on June 5, 2015, it filed an application for a patent, US. Patent Application Serial No. 14/732.435, pertaining to "a method of using a mobile camera . . . paired with a computer screen, for

3

determining a user's distance from the screen and guiding the
user to a particular distance so that the user may take an eye
exam displayed using the computer screen." (Id. ¶ 43.)  That
patent application matured into U.S. Patent No. 9,532,709 (the
"'709 Patent"), the basis of Warby Parker's "Prescription Check"
system. (Id. ¶¶ 43-44, 56.)

Opternative alleged that Warby Parker used Opternative's
confidential and proprietary information to create the '709
patent.  In the original complaint, Opternative also claimed
that Warby Parker falsely ascribed the inventorship of the '709
Patent to Warby Parker employees, despite the fact Dr. Steven
Lee ("Lee"), an Opternative employee, conceived of the invention
and relayed the idea to Warby Parker employees during a
teleconference. (Id. ¶ 45.)

### B. Partial Dismissal of Opternative's Claims and Proposed Amended Complaint

In its original complaint, filed on September 12, 2017,
Opternative advanced seven causes of action: (1) breach of
contract based on the three NDAs, (2) misappropriation of trade
secrets under New York common law, (3) misappropriation of trade
secrets under the Federal Defend Trade Secrets Act ("FDTSA"), 18
U.S.C. § 1836(b), (4) unfair competition, (5) unjust enrichment,
(6) correction of inventorship to name Lee as either the sole or
a joint inventor of the '709 Patent, and (7) specific

performance of Warby Parker's obligations under the NDAs. (Id. ¶¶ 71-106.)

In its August 7, 2018 Opinion & Order, the Court dismissed five of Opternative's claims but allowed Opternative's claims for breach of contract and specific performance to remain. Opternative, Inc. v. Jand, Inc., No. 17 CIV. 6936 (JFK), 2018 WL 3747171, at *9 (S.D.N.Y. Aug. 7, 2018). It dismissed Opternative's misappropriation of trade secrets, unfair competition, and correction of inventorship claims without prejudice and its claim for unjust enrichment with prejudice. Id.

On September 15, 2018, Opternative filed its Amended Complaint, which attempts to remedy the deficiencies in Opternative's original claims for misappropriation of trade secrets under New York law, misappropriation of trade secrets under the FDTSA, unfair competition, and correction of inventorship.

## II.  Discussion

### A. Legal Standard

Leave to amend should be freely granted when justice so requires. Fed. R. Civ. P. 15(a)(2); Dluhos v. Floating & Abandoned Vessel, 162 F.3d 63, 69 (2d Cir. 1998). "Nonetheless, the Court may deny leave if the amendment (1) has been delayed unduly, (2) is sought for dilatory purposes or is made in bad

faith, (3) the opposing party would be prejudiced, or (4) would be futile." Lee v. Regal Cruises, Ltd., 916 F. Supp. 300, 303 (S.D.N.Y. 1996) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002) (citing Dougherty v. North Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002)). "Thus, the standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss." IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC, 783 F.3d 383, 389 (2d Cir. 2015).

In evaluating Opternative's motion to amend, the Court will consider whether the Amended Complaint cures the deficiencies identified in the Court's August 7, 2018 Opinion & Order. In so doing, "the Court treats all factual allegations in the [amended complaint] as true and draws all reasonable inferences" in Opternative's favor. Kuriakose v. Fed. Home Loan Mortg. Corp., 897 F. Supp. 2d 168, 175 (S.D.N.Y. 2012). Should the Amended Complaint not contain sufficient factual matter to state a claim that is plausible on its face, the Court will deny leave to amend as futile. Balintulo v. Ford Motor Co., 796 F.3d 160, 164-65 (2d Cir. 2015).

## B. Misappropriation Claims

### 1. Misappropriation of Trade Secrets Claim under New York Law

The Court dismissed Opternative's New York law misappropriation of trade secrets claim as duplicative of its breach of contract claim. Opternative, 2018 WL 3747171, at *7. If, as here, a plaintiff and defendant are parties to a contract, an action in tort cannot lie unless the plaintiff alleges "that the defendant breached a duty 'independent' of its duties under the contract" by going "beyond a mere breach of the contract and act[ing] in such a way that a trier of fact [can] infer that it willfully intended to harm the plaintiff." Carvel Corp. v. Noonan, 350 F.3d 6, 16 (2d Cir. 2003).

In dismissing Opternative's New York misappropriation of trade secrets claim, the Court held that Opternative had not plausibly alleged that Warby Parker's conduct went beyond "a mere breach of contract" to the point at which a trier of fact could infer a willful intent to harm Opternative. Opternative, 2018 WL 3747171, at *7. Specifically, the Court held that Opternative failed to allege that Warby Parker misrepresented its intentions to Opternative. Id. The Court found that the May 2, 2015 email from Gilboa, stating that Warby Parker was "excited to move forward" did not reflect a deceptive effort on the part of Warby Parker to gain access to Opternative's confidential information because it contained no affirmative

misrepresentations that Warby Parker was not developing its own online exam. <u>Id.</u> Accordingly, the Court held that Opternative had failed to state a claim for misappropriation of trade secrets under New York law. <u>Id.</u>

Opternative has successfully amended its pleading to distinguish its New York law misappropriation of trade secrets claim from its breach of contract claim. It has made two significant changes. First, it has added allegations to clarify that the May 2, 2015 email from Gilboa was in response to Opternative's request to know whether Warby Parker was developing its own online eye exam. (Am. Compl. ¶¶ 69-77.) Second, it has added allegations of other instances in which Warby Parker omitted that it was developing its own online eye exam, including a February 5, 2015 email from Rhodes to Aaron Dallek ("Dallek"), Opternative's CEO, where she discloses that Warby Parker is "evaluating other remote refraction solutions," but fails to mention that Warby Parker is developing its own proprietary vision testing system. (<u>Id.</u> ¶¶ 47-50.) These allegations are enough to plausibly plead that Warby Parker went "beyond a mere breach of the contract and act[ed] in such a way that a trier of fact could infer that it willfully intended to harm the plaintiff" because they adequately allege that Warby Parker fraudulently misrepresented its intentions to induce

8

Opterative to disclose its trade secrets. Carvel, 350 F.3d at 16.

Under New York law, a plaintiff must plead the following five elements to allege a claim that relies on a theory of fraudulent misrepresentation:  "(1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff." Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 98 (2d Cir. 1997).  Warby Parker argues that Opterative cannot state a claim based on Rhodes' February 5, 2015 and Gilboa's May 2, 2015 emails because (1) Warby Parker had no duty to disclose that it was developing its own online eye exam as the parties were not "in a fiduciary or other special relationship" (Defs.' Mem. of Law in Opposition at 12 (October 1, 2018), ECF No. 56 [hereinafter "Opp."]); and (2) Opterative has failed to allege the requisite elements of falsity, scienter, and reliance (Opp. at 12-15).

A duty to disclose normally arises only when the parties are in a fiduciary or other special relationship. Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993).  New York law, however, also recognizes a duty to disclose when a party "has made a partial or ambiguous statement." Id.  In other words, "once a party has undertaken to mention a relevant fact

9

to the other party it cannot give only half of the truth." Id.;
see also Universal Health Servs., Inc. v. United States, 136 S.
Ct. 1989, 2000 (2016) ("[H]alf-truths -- representations that
state the truth only so far as it goes, while omitting critical
qualifying information -- can be actionable
misrepresentations"); In re Vivendi, S.A. Sec. Litig., 838 F.3d
223, 240 (2d Cir. 2016) ("The rule against half-truths, or
statements that are misleading by omission, comports with the
common-law tort of fraudulent misrepresentation, according to
which 'a statement that contains only favorable matters and
omits all reference to unfavorable matters is as much a false
representation as if all the facts stated were untrue.'"
(quoting Restatement (Second) of Torts § 529 cmt. a (Am. Law
Inst. 1977)).  The statements made by Rhodes and Gilboa that
Warby Parker was evaluating other devices, but which did not
disclose that it was pursuing its own, can plausibly be
considered actionable half-truths intended to induce Opternative
to disclose its trade secrets.  Opternative, therefore, did not
need to allege the existence of a fiduciary or other special
relationship.

Opternative has also alleged the additional requisite
elements of falsity, scienter, and reliance.  Warby Parker
argues that Opternative has not alleged falsity because
"Opternative does not allege, as it must, that Warby was already

10

developing its own system." (Opp. at 17.) The Amended
Complaint, however, does contain allegations that Warby Parker
was developing its own product when Rhodes and Gilboa
communicated the statements containing the alleged omissions on
February 5, 2015 and May 2, 2015. (See Am. Compl. ¶ 64 ("Like
her February 5 email, Molly Rhodes' omission of the critical
fact that Warby Parker was already developing its own vision
testing system made its disclosures that it was only considering
'other' systems . . . a further material misrepresentation . . .
."); id. ¶ 96 ("Despite these assurances Warby Parker had
already developed an intent to create its own vision testing
system, and (upon information and belief) had already begun its
development."); id. ¶ 118 ("[I]f not from August 2014 then at
least before the summer of 2015, Warby Parker knowingly rested
upon the continuing misrepresentation that Warby Parker was not
developing its own system.").) Opternative has, therefore,
adequately alleged falsity.

The Amended Complaint also properly pleads scienter. To
satisfy the requirements of Federal Rule of Civil Procedure
9(b), a plaintiff does not need to allege scienter "with great
specificity," but must provide some facts "giving rise to a
strong inference of fraudulent intent." Ouaknine v. MacFarlane,
897 F.2d 75, 80 (2d Cir. 1990). This can be done in two ways:
(1) "the plaintiff may allege a motive for committing fraud and

11

a clear opportunity for doing so," or (2) "identify[]
circumstances indicating conscious behavior by the defendant,
though the strength of the circumstantial allegations must be
correspondingly greater." Powers v. British Vita, P.L.C., 57
F.3d 176, 184 (2d Cir. 1995) (quoting Beck v. Manufacturers
Hanover Trust Co., 820 F.2d 46, 49 (2d Cir. 1987)).  Here,
Opternative has plausibly alleged that Warby Parker's motive was
"to obtain continued and further access to Opternative's
confidential information and trade secrets," (Am. Compl. ¶ 85),
in order to "us[e] that information to assess the viability of
the market, obtain patents on Opternative's disclosures, and
enter the business to Opternative's detriment" (Id. ¶ 13).
Opternative has also adequately pleaded that Rhodes and Gilboa
had the opportunity to commit the alleged fraud. To adequately
plead opportunity, a plaintiff must allege that the defendant
was "well positioned to carry out the fraudulent transaction."
Powers, 57 F.3d 176, 185 (2d Cir. 1995). Here, Opternative has
alleged that Rhodes and Gilboa were in ongoing discussions with
Opternative pursuant to which Opternative provided them with
confidential information. (See id. ¶¶ 17, 42, 109.)  They were,
therefore, well positioned to carry out the fraud.

Finally, the Amended Complaint plausibly alleges that
Opternative relied on Warby Parker's misrepresentations.  It
states, "[a]t all times during their discussions, had Warby

Parker informed Opternative that it was developing its own system, Opternative would have immediately ceased providing Warby Parker with further Confidential Information and trade secrets, and it would have taken steps to secure the information it had already disclosed to Warby Parker." (See Am. Compl. ¶ 71; id. ¶ 84.) Moreover, it contains a statement made by Dallek to Gilboa that any decision by Warby Parker to build its own product would have "significant implications on how we move forward." (Id. ¶ 70.). These allegations are enough at this stage to allege reasonable reliance, which "is a 'nettlesome' and 'fact-intensive' question that the court should 'not lightly dispose of at the motion-to-dismiss stage.'" Icahn Sch. of Med. at Mount Sinai v. Health Care Serv. Corp., 234 F. Supp. 3d 580, 585 (S.D.N.Y. 2017) (quoting Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 186 (2d Cir. 2015)).

Warby Parker argues that Opternative cannot as a matter of law allege reasonable reliance based on any purported misrepresentation because the second and third NDAs contain (1) an express provision permitting Warby Parker to develop its own product, and (2) a general merger clause. This Court is not persuaded by that argument. First, the provision in both NDAs granting Warby Parker a right to build its own product does not "contradict or supersede" misrepresentations by Warby Parker about "[its] present intent" not to build its own online exam.

13

Century Pac., Inc. v. Hilton Hotels Corp., No. 03 CIV. 8258
(SAS), 2004 WL 868211, at *6 (S.D.N.Y. Apr. 21, 2004).
Opternative could have reasonably relied on Warby Parker's
omissions about whether it was pursuing its own online eye exam,
while also agreeing to grant Warby Parker the right to develop
one in the future. See id.

Second, the merger clause in the NDAs, which states,
"[t]his Agreement constitutes the entire agreement with respect
to the Confidential Information disclosed hereunder and
supersedes all prior or contemporaneous oral or written
agreements concerning such Confidential Information," is too
general to preclude an action based on fraud in the inducement.
New York courts will only hold that a merger clause precludes an
allegation of reasonable reliance when (1) "the merger clause
expressly references a specific subject of prior
representations," or (2) "the clause 'was included in a . . .
transaction that was executed following negotiations between
sophisticated business people and a fraud defense is
inconsistent with other specific recitals in the contract.'"
Century Pac., Inc. v. Hilton Hotels Corp., 528 F. Supp. 2d 206,
229 (S.D.N.Y. 2007) (quoting Emergent Capital Inv. Mgmt., LLC v.
Stonepath Group, Inc, 165 F. Supp. 2d 615, 622 (S.D.N.Y. 2001)).

Here, the merger clause contains "boilerplate" language and
does not reference any representations regarding Warby Parker's

intent to develop its own online refraction system. Century
Pac., Inc., 2004 WL 868211, at *6. Opternative, although
represented by counsel, is not a particularly sophisticated
party, and the transaction -- the disclosure of information in
an effort to facilitate a possible sale -- was not particularly
complex. This Court, therefore, concludes that neither the
presence of an express provision in the NDAs permitting Warby
Parker to develop its own eye exam nor the presence of a merger
clause precludes Opternative from alleging reasonable reliance.

In sum, because Opternative has plausibly alleged that it
was induced to disclose its trade secrets based on Warby
Parker's misrepresentations regarding whether it was developing
its own product, Opternative has plausibly alleged that Warby
Parker willfully intended to harm Opternative. Opternative's
misappropriation of trade secrets claim under New York law is,
therefore, not duplicative of its breach of contract claim. C.f.
Brum v. City of Niagara Falls, 145 A.D.2d 928, 929 (N.Y. App.
Div. 1988) ("On this record there is no evidence of any fraud,
misrepresentation or overreaching by the defendant to subject it
to liability for breach of a duty distinct from a breach of the
contract.").

### 2. Misappropriation of Trade Secrets Claim Under the Federal Defendant Trade Secret Act

The Defend Trade Secrets Act ("DTSA") "provides a private cause of action to the 'owner of a trade secret that is misappropriated.'" AUA Private Equity Partners, LLC v. Soto, No. 1:17-CV-8035-GHW, 2018 WL 1684339, at *4 (S.D.N.Y. Apr. 5, 2018) (quoting 18 U.S.C. § 1836(b)(1)). "The DTSA defines 'misappropriation' to include 'acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means' or 'disclosure or use of a trade secret of another without express or implied consent' in specified circumstances." Id. (quoting 18 U.S.C. § 1839(6)). The DTSA, therefore, "contemplates three theories of liability: (1) acquisition, (2) disclosure, or (3) use." Cave Consulting Grp., Inc. v. Truven Health Analytics Inc., No. 15-CV-02177-SI, 2017 WL 1436044, at *4 (N.D. Cal. Apr. 24, 2017).

Opternative argues that it has plausibly stated a claim for misappropriation of trade secrets based on all three theories of liability. (Plfs.' Mem. of Law in Supp. of Mot. for Leave to File First Amended Compl. at 14-17 (Sept. 15, 2018), ECF No. 52 [hereinafter "Mem."].) Warby Parker disputes that Opternative has stated a claim based on acquisition or use, but concedes, based on the Court's August 7, 2018 Opinion & Order, that Opternative has stated a claim based on disclosure. (Opp. at 18-19 ("Given the Court's prior holding as to the breach-of-

contract claim, Warby Parker does not challenge the second DTSA theory for failure to state a claim."))

At this juncture, the Court need not decide whether Opternative has stated a claim for misappropriation under the DTSA based on all three theories of liability -- it is enough that it has stated a claim based one of those theories. Accordingly, Opternative's amendment of its claim for violation of the DTSA is not futile.

### C. Unfair Competition

Opternative has re-pleaded its claim for unfair competition in its Amended Complaint. (Am. Compl. ¶¶ 180-183.) Warby Parker argues that Opternative has dropped this claim because Opternative has made no argument in its memorandum of law in support of its motion for leave to amend for why the Court should change its prior holding dismissing Opternative's unfair competition claim. (Opp. at 25.) Opternative responds that the Court dismissed Opternative's unfair competition claim for the same reason it dismissed its misappropriation of trade secrets claim under New York law -- a failure to allege breach of an independent duty in tort. (Plfs.' Reply Mem. of Law at 10 (October 9, 2019), ECF No. 60.) Opternative argues that because it has remedied this defect in its New York misappropriation of trade secrets claim, it has also remedied it in its unfair competition claim. (Id.)

"The essence of an unfair competition claim under New York law is that the defendant misappropriated the fruit of plaintiff's labors and expenditures by obtaining access to plaintiff's business idea either through fraud or deception, or an abuse of a fiduciary or confidential relationship." Bytemark, Inc. v. Xerox Corp., 342 F. Supp. 3d 496, 505 (S.D.N.Y. 2018) (quoting Telecom Int'l Am., Ltd. v. AT & T Corp., 280 F.3d 175, 197 (2d Cir. 2001)). Although "[t]here is no complete list of the activities which constitute unfair competition," the "general principle" is that "commercial unfairness will be restrained when it appears that there has been a misappropriation, for the commercial advantage of one person, of a benefit or property right belonging to another." Dior v. Milton, 155 N.Y.S.2d 443, 451 (Sup. Ct.), aff'd, 156 N.Y.S.2d 996 (1956). The New York Court of Appeals has explained that there are "two theories of common-law unfair competition: palming off and misappropriation." ITC Ltd. v. Punchgini, Inc., 9 N.Y.3d 467, 476 (2007). Misappropriation, the theory upon which Opternative has premised its claim, "prevents individuals from 'misappropriat[ing] the results of the skill, expenditures and labors of a competitor.'" Carson Optical Inc. v. eBay Inc., 202 F. Supp. 3d 247, 268 (E.D.N.Y. 2016) (quoting ITC Ltd., 9 N.Y.3d at 477).

The Court originally dismissed Opternative's unfair competition claim as duplicative of its breach of contract claim because Opternative had failed to allege that Warby Parker "acted willfully in breaching the NDAs." Opternative, 2018 WL 3747171, at *7; see also Bytemark, 342 F. Supp. 3d at 508 ("Where a plaintiff's unfair competition claim is based entirely on the same alleged conduct proscribed by contract, and plaintiff has pled a breach of contract claim, the unfair competition claim is dismissed as duplicative of the breach claim."). As explained above, however, Opternative has amended its complaint to plausibly allege that Warby Parker fraudulently induced Opternative to disclose its trade secrets. In doing so, Opternative has plausibly alleged that Warby Parker breached a legal duty independent of its duty under the contract. As a result, not only has Opternative plausibly stated a claim for misappropriation of trade secrets, but it has also plausibly stated a claim for unfair competition based on misappropriation.

## D. Correction of Inventorship

"Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent, the Director may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error." 35 U.S.C. § 256(a). "A person who

alleges that he is a co-inventor of the invention claimed in an issued patent who was not listed as an inventor on the patent may bring a cause of action to correct inventorship in a district court under 35 U.S.C. § 256." Eli Lilly & Co. v Aradigm Corp., 376 F.3d 1352, 1356 n.1 (Fed. Cir. 2004).

In its original complaint, Opternative claimed that the '709 Patent should be corrected to include Lee as the sole inventor or a joint inventor with the named inventors, Joseph Carrafa ("Carrafa") and Rhodes. The Court dismissed this claim because (1) Opternative's allegations regarding Lee's conception of the invention and his disclosure of the invention were "conclusory and vague" and did "not include any specific allegations that Dr. Lee conceived of the total patented invention and that any contribution by the named inventors in the '709 patent was insignificant"; (2) Opternative failed to allege any facts showing that Lee's purported suggestion to use a camera constituted a "complete and operative invention" and (3) Opternative failed to provide "sufficient corroborating evidence of Dr. Lee's inventorship." Opternative, No. 2018 WL 3747171, at *9.

Opternative has amended its pleading to allege that Lee and Dallek invented the subject matter of the '709 Patent and should be named as either sole inventors or joint inventors with Carrafa and Rhodes. (Am. Compl. ¶ 186.) Opternative has also

changed its allegations regarding who communicated the invention
to whom and when. In its original complaint, Opternative
alleged that Lee disclosed the invention to Warby Parker
employees in a teleconference. Opternative, No. 2018 WL 3747171,
at *3. Opternative now alleges that (1) Lee disclosed the
invention to Gilboa during an in-person meeting in Chicago, and
(2) Ayo Jimoh ("Jimoh"), an Opternative employee, conveyed the
invention to Rhodes in a teleconference. (Am. Compl. ¶¶ 135
129.) Opternative has also added allegations of corroboration
of the invention; it has added facts that it hired an intern who
built a working prototype of the claimed invention of the '709
patent in two weeks. (Am. Compl. ¶¶ 127-128.)

Warby Parker argues that the Court should not allow
Opternative to amend its correction of inventorship claim for
three reasons: (1) Opternative's new allegations impermissibly
contradict its original complaint; (2) Opternative's Amended
Complaint fails to allege specific facts regarding Lee's and
Dallek's respective contributions to the invention claimed in
the '709 patent; and (3) Opternative has failed to adequately
plead corroboration. (Opp. at 19-25.)

### 1. Inconsistencies Between the Original and Amended Complaint

Warby Parker has not persuaded this Court that leave to
amend should not be granted because of inconsistencies between
Opternative's prior and new allegations. The cases cited by

Warby Parker in support of its argument are unpersuasive.  In
those cases, the plaintiffs demonstrated bad faith in their
amended allegations.  See e.g., Kant v. Columbia Univ., No. 08
CIV. 7476 (PGG), 2010 WL 807442, at *7 (S.D.N.Y. Mar. 9, 2010)
("Kant's unexplained new recollection concerning this critical
aspect of his alleged oral agreement with Columbia officials—
first asserted ten months after his original complaint was filed
and after Defendant had moved to dismiss under the statute of
frauds—strongly suggests bad faith.")  There is no evidence of
bad faith here.  In fact, with the exception of the additional
allegations of corroboration, Opternative's amended allegations
do not necessarily help its claim.  Adding Dallek as an inventor
has no effect on the likelihood of success of the correction of
inventorship claim, and changing the allegations to weaken the
evidence of collaboration between the purported co-inventors has
a negative effect on the claim's likelihood of success.  Warby
Parker has not convinced this Court that Opternative's
allegations indicate bad faith or an intent to delay the
litigation.

### 2. Sole Inventorship

To allege a claim of sole inventorship, an inventor must
allege that he or she "conceived of every claim of the patent
and that any contribution by defendants to the conception of
each and every claim was insignificant." Univ. of Pittsburg of

_Commonwealth Sys. of Higher Educ. v. Hedrick_, No. CV04-9014 CBM
AJWX, 2008 WL 8627085, at *7 (C.D. Cal. June 9, 2008). In
addition, an inventor must allege facts that "corroborate
conception of the invention." _Burroughs Wellcome Co. v. Barr
Labs., Inc._, 40 F.3d 1223, 1229 (Fed. Cir. 1994).

Opternative's new allegations are sufficient to state a
claim for correction of inventorship to name Lee and Dallek as
sole inventors of the '709 Patent. First, Opternative has
alleged that Lee and Dallek conceived of the invention. (Am.
Compl. ¶ 119.) It has cured its conclusory allegations by
adding allegations that Lee and Dallek's invention comprised
"all of the claimed limitations of independent claim 1 of
the'709 Patent, as well as most of the limitations of the other
dependent claims and the limitations of its dependent claims."
(Am. Compl. ¶¶ 131, 133.) It has also added allegations that
all contributions to the '709 Patent other than Opternative's
were insignificant. (_Id._ ("The[] limitations not disclosed were
insignificant, as they were obvious in light of the disclosure
of the distance determination system as a whole, and further
were already known in the prior art."))

Second, Opternative has added facts alleging corroboration
of Dallek and Lee's conception of the invention. A lack of
evidence of corroboration was the main reason the Court
dismissed Opternative's correction of inventorship claim as

23

alleged in the original complaint. Opternative, No. 2018 WL
3747171, at *9 ("Opternative has failed to provide sufficient
corroborating evidence of Dr. Lee's inventorship.").
Opternative has corrected that error by alleging facts that it
hired a graduate student to build a prototype based on the
invention, and that the graduate was able to build the prototype
in two weeks. (Am. Compl. ¶¶ 127-128.)

Finally, Opternative has alleged that Lee disclosed the
invention to Gilboa, the CEO of Warby Parker, on September 12,
2014, and that the '709 Patent was derived from this disclosure.
(Am. Compl. ¶¶ 126, 136.)  These allegations are sufficient at
the pleading stage to allege a claim for sole inventorship of
the '709 Patent.

### 3. Joint Inventorship

To allege a claim of joint inventorship, an inventor must
allege "that he or she (1) contribute[d] in some significant
manner to the conception or reduction to practice of the
invention, (2) ma[de] a contribution to the claimed invention
that is not insignificant in quality, when that contribution is
measured against the dimension of the full invention, and (3)
d[id] more than merely explain to the real inventors well-known
concepts and/or the current state of the art." Pannu v. Iolab
Corp., 155 F.3d 1344, 1351 (Fed. Cir. 1998).  An inventor must
also allege "some element of joint behavior, such as

24

collaboration or working under common direction, one inventor seeing a relevant report and building upon it or hearing another's suggestion at a meeting." Kimberly-Clark Corp. v. Procter & Gamble Distrib. Co., 973 F.2d 911, 917 (Fed. Cir. 1992).

Opternative has failed to allege a claim for joint inventorship, despite alleging one for sole inventorship, because Opternative has failed to allege collaboration between the inventors. Opternative has alleged that Lee disclosed his conception of the invention to Gilboa, but Opternative has not alleged that Lee or Dallek interacted with Caraffa or Rhodes, the named inventors. Without these allegations, Opternative has failed to allege collaboration between the inventors and cannot state a claim for joint inventorship. Vanderbilt Univ. v. ICOS Corp., 601 F.3d 1297, 1303 (Fed. Cir. 2010) ("The interplay between conception and collaboration requires that each co-inventor engage with the other co-inventors to contribute to a joint conception.").

### III. Conclusion

For the reasons stated above, Opternative's motion to amend is GRANTED. Warby Parker shall file its answer to Opternative's claims no later than 14 days from the date of this Opinion.

**SO ORDERED.**

Dated: New York, New York
February 13, 2019

JOHN F. KEENAN
United States District Judge