UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

OPTERNATIVE, INC.,

                                                 **Plaintiff,**                      17-CV-6936 (RA)(SN)

                -against-                                              **ORDER**

JAND, INC.,

                                               **Defendant.**

-----------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge:**

      This case concerns Defendant's allegedly unlawful use of information that Plaintiff produced pursuant to non-disclosure agreements. Plaintiff believes that Defendant used this information—which pertained to online eye-examinations—to launch a competing online eye-examination service. Discovery is ongoing, Throughout the discovery process, the parties have turned to the Court to resolve their differences.[1] Now, the Court is faced with Defendant's letter motion to compel Plaintiff to produce printouts of two files of source code, a printout of a log file, and a listing of directories and files. See ECF No. 121. Defendant's motion is granted in part and denied in part. The Court further orders the parties to engage in a meet and confer process outlined below in advance of two preemptively scheduled discovery conferences, one on July 30, 2019, at 2:00 pm and one on August 27, 2019, at 2:00 pm.

---

[1] Discovery began in August 2018, when Plaintiff served its first request for production. See ECF No. 67 at 1. Since then, the parties have engaged in at least 6 disputes comprised of 18 letters. See ECF Nos. 66-68, 77; ECF Nos. 85-87; ECF Nos. 99-103; ECF Nos. 114-15; ECF Nos. 118, 121; ECF Nos. 124-25. The Court has already held two discovery conferences, see ECF Nos. 72, 90, and issued three written orders, see ECF Nos. 105, 116, 122. This is the fourth written discovery order.

## BACKGROUND

Courts "have consistently acknowledged the importance of source code and the fact [that] it is often one of the most valuable assets a company possesses." Imageware Systems, Inc. v. Fulcrum Biometrics, LLC, 13-CV-936 (DMS), 2014 WL 12489939, at *1 (S.D. Cal. Nov. 25, 2014). For that reason, parties routinely request, and courts routinely grant, protective orders that provide special protections to source code. See, e.g., OpenTV, Inc. v. Apple, Inc., No. 14-CV-1622 (JST), 2014 WL 5079343, at *3 (N.D. Cal. Oct. 9, 2014); Linex Tech Inc. v. Hewlett Packard Co., No. 13-CV-159 (CW), 2013 WL 1820909, at *4 (N.D. Cal. Apr. 30, 2013); Kelora Sys., LLC v. Target Corp., No. 10-CV-4947 (CW), 2011 WL 6000759, at *9 (N.D. Cal. Aug. 29, 2011).

The parties agreed to such an order here. See Protective Order (ECF No. 69). Pursuant to Paragraph 12 of the Order, any material designated as "Highly Confidential -- Source Code" will not be produced in a native format. Id. ¶ 12. Instead, the source code must be "made available for inspection, in a format allowing it to be reasonably reviewed and searched, during normal business hours or at other mutually agreeable times at an office of the Producing Party's counsel or another mutually agreed upon location." Id. The on-site review is highly circumscribed. Id. It must be conducted in a "secured room without Internet access or network access to other computers." Id. The inspecting party is prohibited from copying, removing, or transferring any files from the secure location. Id. The inspecting party may, however, request printouts "of limited portions of source code that are reasonably necessary for the preparation of court filings, pleadings, expert reports, discovery responses, or demonstratives ("Papers"), or for deposition or trial, but shall not request paper copies for the purposes of reviewing the source code other than electronically." Id.

Pursuant to that Order, Plaintiff designated the source code of an alleged prototype developed by Brian Strobach as highly confidential source code. See ECF No. 121-1 at 1. Defendant's counsel and its expert witness, Dr. Jennifer Golbeck, inspected the source code at the offices of Plaintiff's counsel on May 10, 2019, for about five hours. Golbeck Decl. ¶ 2 (ECF No. 121-3). Defendant followed up on May 13, 2019, to request printouts of twenty files, consisting of as much as 12,000 lines of code. See ECF No. 121-2 at 12. Plaintiff responded that it believed that this request was not compliant with the Protective Order, but that it "would be happy to consider a narrower request." ECF No. 121-2 at 13.

In response, Defendant narrowed its request to printouts of: (1) two files of source code comprising 354 lines of code fitting on 6 pages;[2] (2) a log file;[3] and (3) a directory of the files contained in the source code written by Strobach. See ECF No. 121-2 at 9, 12. Defendant represented that the printouts were reasonably necessary for Brian Strobach's deposition and Dr. Golbeck's expert report. ECF No. 121-2 at 8. Plaintiff refused, arguing that the request for the two files was not compliant with the protective order and that Plaintiff would produce the log file and directory only if Defendant agreed to a reciprocal exchange. See ECF No. 121-2 at 7. Defendant then filed its letter motion, see ECF No. 121, and Plaintiff opposed, see ECF No. 125.

---

[2] The two files of source code are located in the review database at: (1) "Strobach/Responsive Documents - Brian Strobach/Opternative- Prototypes/VuforiaSamples/ImageTargetsEAGLView.mm"; and (2) "Strobach/Responsive Documents - Brian Strobach/Opternative-Prototypes/VuforiaSamples/ImageTargetsEAGLView.h." See ECF No. 121 at 2.

[3] The log file is located at "Strobach/Responsive Documents - Brian Strobach/Opternative-Prototypes/.git/logs/HEAD." See ECF No. 121 at 2.

# DISCUSSION

## I.  The Two Files of Source Code

Plaintiff opposes the request for printouts of these files for two reasons. First, Plaintiff believes that the Protective Order may allow for the use of printouts *during* a deposition, but that it prohibits requests for the purpose of *preparing* for the deposition. Second, Plaintiff argues that Defendant has failed to articulate why printouts of the two files are reasonably necessary for Strobach's deposition and Golbeck's expert report. The first argument is frivolous. The second has a basis in the protective order. It is nevertheless unconvincing.

### A.  Whether Printouts may be used for Deposition Preparation

Plaintiff's first argument comes from a strained reading of one sentence in the Protective Order, which reads:

> The Receiving Party may request paper copies of limited portions of source code that are reasonably necessary for the preparation of court filings, pleadings, expert reports, discovery responses, or demonstratives ("Papers"), or for deposition or trial, but shall not request paper copies for the purposes of reviewing the source code other than electronically.

Protective Order ¶ 12. Plaintiff argues that the word "reviewing" should be read literally to prohibit review of a printout in preparation for a deposition. Defendant disagrees, arguing that requests for printouts are prohibited only if the purpose is to circumvent the requirement for on-site review.

In Plaintiff's eye, "reviewing," encompasses all acts of familiarizing oneself with the source code. Out of context, that seems possible. But in context, it is ridiculous. That definition would require attorneys writing their deposition outlines to sit in a secured room with the source code, away from their offices, without access to the internet or any other network. That is a significant burden that also would do nothing to promote the confidentiality of the source code.

After all, Plaintiff concedes that printouts, which are already subject to extensive protections,[4] may undisputedly be produced for use during depositions. Thus, Plaintiff's interpretation would impose significant costs on discovery in order to purchase a minimal delay in the production of source code printouts.

In contrast, Defendant's interpretation is much more sensible. The clear purpose of the Protective Order is to restrict the unnecessary copying and dissemination of confidential source code as much as possible. Defendant's interpretation of "reviewing" furthers that purpose in a reasonable way. In its view, the order substitutes the initial production of all source code in a native format for an initial "review" on-site. Then, if the requesting party identifies portions of the source code that are reasonably necessary for litigation—such as, for example, a portion that may be discussed at deposition or in an expert report—it may request printouts of those limited portions. This procedure is efficacious and efficient. It prevents the copying and dissemination of source code in its native format while also allowing the requesting party to see for itself what code, if any, it actually needs to litigate its case. It also does this without impeding the preparation of deposition outlines and expert reports.

Thus, the Court adopts Defendant's interpretation of the Order. The phrase "reviewing the source code" does not refer to all acts of familiarization. Defendant may, therefore, request printouts of source code that it reasonably needs to prepare for an upcoming deposition.

**B. Whether the Printouts are Reasonably Necessary**

Plaintiff's second argument is that Defendant has not articulated why these two files are reasonably necessary for Strobach's deposition and Golbeck's expert report. Unlike the first

---

[4] Specifically, the party receiving printouts: (1) may not make copies unless they are strictly necessary for the litigation; (2) must keep all printouts and copies of printouts in a secured and locked area; and (3) must keep a log of any person who has inspected the printout. Protective Order ¶ 12.

argument, Plaintiff's second argument rests on a reasonable interpretation of the Protective Order. Nevertheless, the Court disagrees with the objection in this specific instance.

In opposing the request, Plaintiff refers to other decisions where the Court denied requests for printouts as prohibited by a protective order. But Plaintiff's authorities are not analogous to the request here. This is not a case where the requesting party has altogether failed to articulate a need for the printout. See, e.g., Synopsys, Inc. v. Ubiquiti Networks, Inc., 2018 WL 2294281, at *2 (N.D. Cal. May 21, 2018) ("With respect to expert reports, [the expert], does not attest that source-code *printouts* . . . are reasonably necessary for him to prepare his expert report."). Rather, Defendant requested these two files because their names match publicly available code samples written by the virtual reality company Vuforia. See Golbeck Decl. ¶¶ 5-6. Presumably, Defendant's expert would like to examine the degree to which those files match the publicly available code. That is a reasonably necessary basis for the request. It also is not a request that likely would be narrowed with further on-site review. Compare with Imageware Systems, Inc. v. Fulcrum Biometrics, LLC, No 13-CV-936 (DMS), 2014 WL 12489939, at *1 (S.D. Cal. Nov. 25, 2014) (denying request for printout of 5905 lines of code because there was no "no indication that a second review of the source code . . . would not . . . allow him to further limit the scope of his request for print copies"). Rather, Defendant's expert selected these two files after five hours of review, and a proper comparison will most likely require complete printouts of the files.

Thus, the Court will grant Defendant's motion. Defendant's expert already conducted an on-site review for several hours. Following that review, she asked for the printouts consisting of

305 lines of code on six pages.[5] That is a reasonable request that also follows the procedure contemplated by the Protective Order. Plaintiff should, therefore, comply with the Order and produce printouts of the two files.[6]

## II.   The Log File

The impasse over the log file is truly strange. A log file is a file that records events or messages relevant to source code. Defendant requested a printout of one log file identified during its on-site review. Since then, both parties *have already agreed* to a reciprocal exchange of log files. See ECF No. 121 at 4 ("[Defendant] . . . has agreed to comply with reciprocal requests for log files . . . made by [Plaintiff] in accordance with Paragraph 12 of the Protective Order"); ECF No. 125 at 5 ("[Plaintiff] already agreed to produce it, provided that [Defendant] reciprocally produce its log file"). Nevertheless, Plaintiff still has not produced the file. As far as the Court can tell, Plaintiff is using it as a bargaining chip in an ongoing dispute over the scope of the

---

[5] Plaintiff describes in detail Defendant's earlier request for twenty files comprising over 12,000 lines of code. See ECF No. 125 at 2. It is possible that request does not comply with Paragraph 12. But it is not the request before the Court.

[6] To the extent that Plaintiff is arguing that a printout of an entire file is per se "not limited" under the Protective Order, the Court declines to adopt that interpretation. The parties could have agreed to such a specific limitation in the protective order. See, e.g., EPL Holdings, LLC v. Apple Inc., No. 12-CV-4306 (JST), 2013 WL 2181584, at *6 (N.D. Cal. May 20, 2013) (discussing protective order with a specific page number limitation to printout requests). But they did not do so. Instead, they agreed to an order that allows for "limited portions of source code." Protective Order ¶ 12. In this specific context, 305 lines of code spanning six pages is a limited portion.

definition of "Highly Confidential -- Source Code."[7] But neither party has explained the nature of that lurking dispute. The Court will not rule on it.[8]

The Court will, however, order Plaintiff to produce a printout of the specific log file requested by Defendant. When a party requests discoverable material, the opposing party has the burden of demonstrating good cause for denying the request. See Mason Tenders Dist. Council of Greater N.Y. v. Phase Constr. Servs., 318 F.R.D. 28, 36 (S.D.N.Y. 2016) (citation omitted); see also Fed. R. Civ. P. 26(b)(2). Plaintiff has not demonstrated anything resembling good cause. Plaintiff does not, for example, argue that printing the log file would be unduly burdensome or disproportionate to the needs of the case. Nor does Plaintiff argue that the request is improper under the protective order.[9] Instead, Plaintiff generally bemoans Defendant's definition of "Highly Confidential -- Source Code." That is an airing of grievances. It is not a basis for

---

[7] Sometime earlier this year, Defendant withheld production of thousands of emails reflecting commits of code to Defendant's source code repository even though many of the emails contained no source code. See ECF No. 125 at 5 n.1. Plaintiff's position was that these emails were not source code, and Defendant later produced the emails. See ECF No. 121-2 at 9-10.

The memory of that dispute appears to have caused the impasse here. When Plaintiff refused to printout the log file, Defendant argued that this was inconsistent with Plaintiff's earlier position that "documents that do not contain source code should be produced in the ordinary course." ECF No. 121-2 at 10. Plaintiff seized on that objection, offering to produce the log file so long as Defendant agreed that "documents that are within a source code repository but do not constitute actual source code should be" exempt from Paragraph 12. ECF No. 121-2 at 8. Defendant declined that offer, and instead reiterated its position that the log file is "Highly Confidential -- Source Code." See ECF No. 121-2 at 6 ("As to . . . [the] log file . . . we are requesting a source code print-out pursuant to Paragraph 12 of the Protective Order.").

[8] The Protective Order defines "Highly Confidential -- Source Code" as sensitive confidential information "representing computer code and *associated comments and revision histories*, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms or structure of software or hardware designs." Protective Order ¶ 4 (emphasis added). At first blush, a log file in a source code repository appears to fit within the definition of "associated comments and revision histories." That said, neither party has endeavored to explain their positions. Nor have they explained the stakes. Indeed, the Court has had to proceed like an archaeologist, sifting through layers of emails in order to reconstruct a fossilized facsimile of the dispute. See supra note 6. It would therefore be improper to offer a ruling on the definition of "Highly Confidential -- Source Code" or its applicability to log files at this time.

[9] Indeed, Plaintiff apparently *wants* the log file to fall outside the Order's definition of "Highly Confidential – Source Code."

8

denying Defendant's motion. The Court will accordingly grant the motion and order Plaintiff to produce a printout of the log file.

## III. The File Directory

Defendant's last request is for "a printout of the directories and files for the code that Mr. Strobach produced." ECF No. 121-2 at 12. Plaintiff refuses to comply, arguing that nothing obliges it to "create a directory or file listing document to aid Warby's review of source code" and that Warby has refused to provide "corresponding information for its own source code." ECF No. 125 at 4.

The Court denies Defendant's motion for the file directory without prejudice. Neither party has explained what costs—if any—are involved in the production of a printout of their respective file directories. The Court is somewhat skeptical that there is anything other than a nominal cost involved in creating and printing a directory of files that have already been compiled for review. Nevertheless, there must be some cost, because the burden of producing file directories has apparently been a subject of significant dispute. See, e.g., ECF No. 121-2 at 8 ("It bears mentioning that this is one of the items we repeatedly asked [Defendant] to provide . . . . Having such a reference document off-site would have substantially expedited [Plaintiff's] review . . . but [Plaintiff] made do without."). Instead of blindly tilting the balance of this standoff, the Court will reserve its judgment. If Plaintiff or Defendant is unable to obtain file directories to its satisfaction, then they should file properly supported briefing with the Court.

## IV. Procedure Moving Forward

Fact discovery in this case is set to close on September 19, 2019. See ECF No. 113. To ensure that the parties meet this deadline, the Court will provide two more opportunities to raise outstanding fact discovery disputes by scheduling two telephonic discovery conferences, one

scheduled for July 30, 2019, at 2:00 p.m. and one scheduled for August 27, 2019, at 2:00 p.m. In advance of those conferences, the Court orders the parties to follow a specific meet-and-confer schedule:

1. In advance of the July 30, 2019 conference, the parties must exchange letters identifying all outstanding deficiencies in discovery responses—if any—no later than Monday, July 15, 2019. The parties must meet and confer telephonically or in person to resolve those deficiencies in good faith no later than Friday, July 19, 2019. If the parties are unable to resolve their disputes, then they must file short letter motions to compel—consisting of no more than 5 pages—no later than Tuesday, July 23, 2019. Any response to a letter motion to compel shall be no more than 5 pages and shall be filed no later than Friday, July 26, 2019. If the parties do not have disputes ready for submission to the Court, then they must file a joint status letter on Tuesday, July 23, 2019, asking the Court to cancel the July 30, 2019 conference.

2. In advance of the August 27, 2019 conference, the parties must follow a similar schedule: (1) exchange deficiency letters no later than Monday, August 12, 2019; (2) meet and confer no later than Friday, August 16, 2019; (3) short letter motions no later than Tuesday, August 20, 2019; (4) short letter replies no later than Friday, August 23, 2019. Again, if the parties have no disputes ready for submission, then they must file a joint status letter by Tuesday August 20, 2019, asking the Court to cancel the conference.

To be clear, this schedule is not an invitation for the parties to submit more discovery letters. Rather, it is a template to ensure that the parties engage in good faith negotiation to resolve all outstanding discovery disputes. It will also ensure that all disputes—if any—are properly defined before they are submitted to the Court.

## CONCLUSION

The Court grants in part and denies in part Defendant's motion. Plaintiff is ordered to produce printouts of the two files of source code and the log file. The Court will not order Plaintiff to produce a printout of the file directory at this time. Two telephonic discovery conferences are scheduled for July 30, 2019, at 2:00 pm and for August 27, 2019, at 2:00 pm. The parties are further ordered to follow the dispute resolution procedure outlined in this opinion. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 121.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:   New York, New York
         July 12, 2019